**PHILLIPS CONSTRUCTION CO., Inc.**

v.

**The UNITED STATES.**

No. 357–62.

United States Court of Claims.

April 16, 1971.

---

---

James H. Mann, Washington, D. C., attorney of record, for plaintiff. Lucas, O'Connell, Friedman & Mann, Washington, D. C., of counsel.

Thomas J. Lydon, Washington, D. C., with whom was Asst. Atty. Gen. L. Patrick Gray, III, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS and NICHOLS, Judges.

## ON DEFENDANT'S MOTION AND PLAINTIFF'S CROSS – MOTION FOR SUMMARY JUDGMENT, AS AMENDED

### PER CURIAM:

This case was referred to Trial Commissioner Lloyd Fletcher with directions to prepare and file his opinion on the issues of defendant's motion and plaintiff's cross-motion for summary judgment, as amended, under the order of reference and Rule 166(c). The commissioner has done so in an opinion and report filed on January 15, 1971. Neither party has filed a request for review by the court of the commissioner's opinion and report and the time for so filing under the rules of the court has expired. On March 4, 1971, defendant filed a motion under Rule 54(b) (3) (iii) that the court adopt the commissioner's report and recommendation as the basis for its judgment in this case.

Since the court agrees with the opinion and recommended conclusion of the trial commissioner, it hereby adopts the same, as hereinafter set forth, as the basis for its judgment in this case. Therefore, plaintiff's cross-motion for summary judgment is granted only to the extent of the $25,877.25 not contested by defendant as to which sum judgment is entered for plaintiff and plaintiff's motion is otherwise denied. Defendant's motion for summary judgment is granted, except as to the $25,877.25, and plaintiff's petition is otherwise dismissed.

## OPINION OF COMMISSIONER

### FLETCHER, Commissioner:

In its final decision of June 24, 1970, the Armed Services Board of Contract Appeals, speaking through Member Harris J. Andrews, Jr., referred, with melancholic accuracy, to the "long and tortuous history of this claim." It constitutes a classic example of the sometimes "ping-pong" nature of a Wunderlich Act review case. The contract in dispute has been the subject of five opinions issued by the ASBCA, and two opinions by this court (374 F.2d 538, 179 Ct.Cl. 54 (1967); 394 F.2d 834, 184 Ct.Cl. 249 (1968)), plus an order promulgated by the court, following briefing and oral argument, on June 13, 1969, 188 Ct.Cl. 1157. Hence, one cannot help but join Member Andrews in his expressed hope that, at long last, the case may be brought "to a final conclusion."

The detailed facts surrounding this long dispute have been set forth in this court's two prior decisions cited above, and thus need not be repeated here. A brief summary thereof, coupled with a description of relatively recent developments at the ASBCA level, should be sufficient for an understanding of the narrow remaining issue.

Pursuant to a fixed-price contract entered into with defendant, plaintiff constructed some 800 housing units for the United States Air Force at Myrtle Beach, South Carolina. Financing of the project was accomplished under the Capehart Housing Act, all as described

by the court in its first *Phillips* decision, *supra.* Some of the heaviest rainfall in the history of the area seriously delayed plaintiff's construction work with the result that completion of the project required some 286 days longer than originally contemplated. Contributing to this delay were deficiencies in the Government-designed drainage system which caused quagmire conditions at various work areas.

In its first decision, the ASBCA held (1) that the inadequate drainage system constituted a "changed condition" for which plaintiff was entitled to an equitable adjustment computed, however, on the further finding that the changed condition had affected only about 10.2 percent of the entire worksite. The Board also held (2) that plaintiff's claim for additional interest paid for the extended contract period must be disallowed because of there being no contractual or statutory authority for the payment of such interest.

Each of these two holdings was the subject of two separate decisions by this court. In the first of these the court held, on cross-motions for summary judgment, that if the Board's finding of a changed condition should be sustained,[1] then additional interest costs were properly a part of the equitable adjustment. Phillips Construction Co. v. United States, 374 F.2d 538, 179 Ct.Cl. 54 (1967). Thereafter, in its second decision, the court considered and sustained the Board's finding that the defective drainage system constituted a changed condition. Phillips Construction Co. v. United States, 394 F.2d 834, 184 Ct.Cl. 249 (1968).

In an order dated August 6, 1968, I allowed defendant's motion to stay proceedings in this court to the end that, as required by the Supreme Court's decision in United States v. Anthony Grace & Sons, Inc., 384 U.S. 424, 86 S.Ct. 1539, 16 L.Ed.2d 662 (1966), the amount of plaintiff's recovery under its interest claim might be determined in the first instance by the ASBCA. At the Board, plaintiff asserted that it was entitled to recover all its increased interest costs whether or not such costs were specifically related to the changed condition. In a decision dated January 21, 1969, the Board denied plaintiff's contention. Whereupon plaintiff filed a motion for judgment in this court on the ground that the ASBCA opinion was erroneous and that the amount of interest overpayment had already been decided by the Board. In an order dated June 13, 1969, the court denied plaintiff's motion stating at 188 Ct.Cl. 1157:

\* \* \* \* \* \*

\* \* \* the court concludes that the Armed Services Board of Contract Appeals is correct (in its opinion of January 21, 1969) in its view that the court's prior decisions in this matter (374 F.2d 538, 179 Ct.Cl. 54; 394 F.2d 834, 184 Ct.Cl. 249) held that plaintiff is entitled to the interest paid only insofar as the delay-period was attributable to the changed conditions, and that the court did not hold that plaintiff is entitled to all of the interest sought by it. The court also agrees with the ASBCA that the question of how much of the entire delay and the resulting interest costs were caused by the changed condition and how much, if any, were caused by other conditions is now properly before the Board. The court intimates no position on that question which cannot properly be before it until after the Board decides, but the court does reject plaintiff's new contention that the defendant is automatically liable for all additional interest paid by the contractor in a Capehart Act project as a result of delays or time-extensions, regardless of the Government's fault or responsibility. The court denies plaintiff's motion for reconsideration.

In an opinion dated April 10, 1970, the Board found that there had been a payment by plaintiff of $79,554.09

---

1. At the time of decision, that issue had not yet reached the court.

interest over that anticipated on the construction loan financed under the Capehart Act and also interest payments of $44,052.25 on a capital loan account covering two projects, of which plaintiff claimed an overpayment of 57 percent attributable to the Myrtle Beach project, or $25,108.78. The Board ruled, however, that plaintiff was entitled to recover only for excess interest paid in the amount of $25,877.-25. That amount was computed on the finding that, out of the total delay period, only 75 days were attributable to the changed condition, taking the average interest cost of $291.63 per day from November 1, 1957, through November 5, 1958, the period during which there was Government-faulted flooding from the uncleared outfall ditch, for a total of $21,872.25. The Board also allowed 4½ percent interest for one year on the $89,000 originally awarded plaintiff in this court's opinion of May 10, 1968, which amounts to $4,-005. The total interest allowed, therefore, was $25,877.25.

The Board explained its finding that only 75 days of the total delay were due to the changed condition as follows:

\* \* \* The monthly progress reports and payment requests show that 75% of the work was scheduled for completion during this first year of the job, while only 45% was accomplished. But there is no specific evidence to attribute this slippage to the changed conditions, as distinct from heavy rainfall and cold weather. Appellant's witness did estimate that it lost 75 days during the first 12 months, because of lack of access to work areas and the inability to work in the streets in the flooded areas. We accept this estimate of 75 days lost due to changed conditions as the best evidence in the record.

The remaining evidence is insufficient to find additional delays from such causes. Appellant's witness did testify that some time was lost after the first 12 months, but that he could not reasonably estimate the extent

thereof. Certainly if the man in charge of the project for the appellant could not make such an estimate, the Board cannot do so. It is the appellant's responsibility to establish the amount to which it is entitled. \* \* Except for 75 days delay above mentioned, appellant has failed to carry this burden.

\* \* \* Unfortunately we cannot pick from the record the 75 days for which appellant should recover its interest. We can only prorate this interest over the approximate 12 months' period in which the flooding occurred. Between November 1, 1957, and November 5, 1958, a period of 370 days, the appellant paid interest on the construction loan in the amount of $107,902.74. This is an average of $291.63 each day. Applying this to the 75 days of delay, appellant should recover $21,-872.25.

The Board then explained its rationale for the computation of extra interest due plaintiff on its capital loan account:

The extra interest on the capital loan account is a product of the amount borrowed to finance the extra costs of the changed conditions. This is exclusive of interest on the construction loan, which was not financed from the capital loan account. The amount needed to finance the changed conditions cost was $89,000. Appellant paid interest thereon at the rate of 4½% per annum. The appellant borrowed this money in increments as the costs were incurred. We do not have sufficient information to average it as we did the interest on the construction loan. We estimate that appellant paid interest on the full amount for about one-half of the construction period, or one year. It therefore paid extra interest in the amount of $4,005.

The Government thereupon moved the Board to reconsider its decision and to make additional findings of fact. With respect to its opinion that plaintiff was entitled to recover extra interest in the total sum of $25,877.25, the ASBCA re-

affirmed its decision. With respect to the Government's request that additional findings of fact be made, the Board held:

The respondent's motion further requests additional affirmative findings as to delays caused by factors, other than the changed conditions, for which the respondent was not responsible. The appellant has moved for review of the board's decision by the Court of Claims. Respondent has requested the additional findings to avoid any possible necessity for a further remand by the court. Normally we would not consider making additional findings not necessary to our decision. The long and tortuous history of this claim dictates, however, that we use our efforts to aid in bringing it to a final conclusion. We thought that it was clear from our opinion that we had found that all delays, except the 75 days for which we allowed interest, were attributable to factors other than the changed conditions. Such factors were either not the responsibility of the Government or any claims thereon have been long barred by the releases. If such conclusory findings do not so appear, we now make them.

■ In my opinion, the Board's finding that no more than 75 days of plaintiff's total delay period was attributable to the changed condition is fully supported by the evidence. Indeed, this finding constitutes an acceptance by the Board of the best estimate that *plaintiff's own witness* was able to make. Being thus supported, the finding is entitled to finality. Phillips Construction Co. v. United States, 394 F.2d 834, 842, 184 Ct.Cl. 249, 263 (1968).

The necessary corollary of this finding was that all other delays suffered by plaintiff were attributable to factors other than the changed condition and hence were not the responsibility of the Government. The Board so stated in its final decision on the motion for reconsideration, as quoted above, a statement which plaintiff now describes as the Board's unsupported *ipse dixit*. However, it was plaintiff's burden to show that more than 75 days of its delay period should be attributed either to the changed condition or to some other Government-caused factor. Plaintiff has completely failed to carry such burden.

In any event, says plaintiff, due to what it calls the "peculiar nature" of a Capehart Housing contract, such as here involved, fairness dictates that the Government should pay all interest which accrues as a result of any delay not the fault of the contractor even though such delay is also not attributable to Government fault. The argument is that in the ordinary construction project for which appropriated funds are used and from which the contractor is permitted to receive drawdowns from time to time on the basis of work completed, the risk of delay due to adverse weather is admittedly a risk which the contractor bears. In the case of Capehart financed construction, however, in addition to that delay which the contractor assumes, interest on the amount of money which the contractor has been permitted to draw down accumulates. From this difference, plaintiff argues it is only fair that interest accruing as a result of faultless delay be paid by the Government because the Government is the beneficiary of the Capehart scheme of financing in that it does not have to use appropriated funds for the project. Furthermore, plaintiff submits that adverse weather causing delay and thereby increasing the amount of interest which someone must pay should be treated in the same manner as if a mistake had been made in the specifications so that additional bricks and mortar over and above those specified were required to complete the construction project.

In my view, however, the court has already considered and rejected this novel contention by plaintiff. In its

order of June 13, 1969, *supra,* the court stated *inter alia:*

\* \* \* \* \* \*

[T]he court does reject plaintiff's new contention that the defendant is automatically liable for all additional interest paid by the contractor in a Capehart Act project as a result of delays or time-extensions, regardless of the Government's fault or responsibility. \* \* \* [188 Ct.Cl. 1157.]

The court's order is a simple reflection of the rule often stated that absent fault on the Government's part, it will not be required to respond in damages. See, for example, Wunderlich Contracting Co. v. United States, 351 F.2d 956, 969, 173 Ct.Cl. 180, 200 (1965). Specifically, as applied to this case, plaintiff's increased interest cost arising out of delays caused by abnormally severe rainfall must be absorbed by plaintiff, except for the interest accruing during the 75-day delay period found by the ASBCA to be attributable to the changed condition. See, Banks Constr. Co. v. United States, 364 F.2d 357, 371, 176 Ct.Cl. 1302, 1325 (1966); Lenry, Inc., et al. v. United States, 297 F.2d 550, 156 Ct.Cl. 46 (1962) Cf. John A. Johnson Contracting Corp. v. United States, 132 F.Supp. 698, 132 Ct.Cl. 645 (1955).

## CONCLUSION

Based upon the foregoing, the court concludes that plaintiff is entitled to recover only to the extent of the $25,877.-25 allowed by the Board and not contested by defendant. Therefore, plaintiff's cross-motion for summary judgment is granted only to the extent of said $25,877.25 not contested by defendant, defendant's motion for summary judgment is granted except to the extent of the said $25,877.25, and judgment is entered for plaintiff in the sum of the $25,877.25 with plaintiff's petition otherwise dismissed.